FILED
2008 Apr-25  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TOWN OF TRIANA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | CV-08-S-0685-NE |
| | ) | |
| **BLAKE DORNING, in his official** | ) | |
| **capacity as the Sheriff of Madison** | ) | |
| **County, Alabama,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

## NATURE OF THE ACTION

1.     This is an action for declaratory and injunctive relief, and costs and attorney fees, for Defendant's violation of the Fifth and Fourteenth Amendments of the United States Constitution.  Defendant's actions are an unconstitutional taking of Plaintiff's property without just compensation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331, § 1343, § 2201 and § 2202, and pursuant to 42 U.S.C. § 1983.

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) in that the

Defendant resides within this District, the claims for relief arose in this District,

and the subject property is located in this District.

## PARTIES

4.      Plaintiff, the Town of Triana ("Triana" or "Plaintiff") is a municipal

corporation within the jurisdiction of Madison County, Alabama.

5.      Defendant Blake Dorning is the Sheriff of Madison County, Alabama

("Defendant" or the "Sheriff").  Plaintiff sues Defendant for declaratory and

injunctive relief, and costs and attorney fees, in his official capacity.

## SOVEREIGN IMMUNITY

6.      Defendant does not enjoy sovereign immunity from suit under the Eleventh

Amendment or Section 14 of the Alabama Constitution because the claims asserted

herein are for declaratory and injunctive relief against Defendant in his official

capacity and do not seek monetary relief from the State of Alabama.

## FACTUAL BACKGROUND

7.      Triana, a municipality located within Madison County, has a population of

656.  Unlike any other municipality in Madison County, Triana's population is

predominantly African-American and lower income.  Ninety-five percent of the

residents of Triana are African-American.  Triana has long struggled to attract

business development and to generate revenues like other municipalities and parts of Madison County.

8.     Section 65 of the Constitution of 1901 prohibits gambling.  Since 1980, Alabama has adopted a number of ordinances specifically allowing the operation of bingo in certain counties under rules and regulations to be promulgated by the counties themselves or by the municipalities within them.  *See* Ala. Const. Amends. 386, 387, 413, 440, 506, 508, 542, 549, 550, 565, 569, 599, and 612; *see also Opinion of the Justices*, 795 So. 2d 630, 634 (Ala. 2001).

9.     Among those amendments is Amendment 387 to the Alabama Constitution on 1901 ("Amendment 387" or the "Amendment"), which applies in Madison County.  A complete and accurate copy is attached as Exhibit A.  The Amendment makes it lawful for non-profit organizations to operate bingo games "for prizes or money . . . for charitable or educational purposes . . . subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions."  It further provides that "said governing bodies shall have the authority to promulgate rules and regulations for the licensing and operation of bingo games, within their respective jurisdictions," provided the governing bodies insure compliance with the provisions of the Amendment.  *See id.*

10.     Pursuant to Amendment 387, in 1994, the Town of Triana adopted an ordinance promulgating various rules and regulations relating to the operation of bingo games within the Town limits.

11.     In December 2004, Alabama Attorney General Troy King reviewed certain constitutional amendments which specifically authorize the playing of bingo at facilities in Greene and Macon Counties and concluded that, as a matter of law, electronic bingo machines operating under validly enacted constitutional amendments permitting the playing of bingo are permissible under the broad language of the amendments.  *See* Alabama Attorney General Press Release, *A.G. King Announces Findings of His Gambling Review* (Dec. 1, 2004) *available at* http://www.ago.state.al.us/news_template.cfm?Item=861.

12.     On October 9, 2006, in order to stimulate economic development and to generate desperately needed revenues to support its citizens and their livelihoods, the Council of the Town of Triana adopted Ordinance No. 2006-05, through which it sought to update its ordinance in light of recent developments in the operation of bingo by electronic means.  A complete and accurate copy of Ordinance 2006-05 is attached as Exhibit B.  The Ordinance provides for taxation of bingo participants at a rate of three dollars ($3.00) per person participating in a session of call bingo and a tax of two hundred dollars ($200) per year per machine located in the bingo facility.

13.     The Town of Triana has currently licensed nine nonprofit organizations to conduct bingo operations within its corporate limits.  Those organizations include Triana Volunteer Fire Department, Montgomery HEAT Athletics, Triana Youth Center, Houston Achievement Place, Jacksonville Lions Club, Triana Historical Society, Alabama Bulldogs Association, Department of Texas Veterans of Foreign Wars of the United States, and The Bridge, Inc.  Each of those organizations has certified its existence for 23 months prior to application and that the games on which its bingo games will operate are compliant with the Ordinance.

14.     Nonprofit organizations currently operate bingo games from one of two bingo facilities in Triana:  the Triana VFW, 511 6th Street, Madison, AL 35756, or at Charity Bingo, 1168 Wall Triana Highway, Madison, AL 35756.

15.     The revenues generated from the taxes assessed on the operation of electronic bingo games within the jurisdiction of the Town of Triana comprise a substantial portion of the Town's annual revenues, upon which the Town relies to fund its general operations and obligations.  The revenues generated from taxes on bingo are greater than revenues generated from ad valorem, sales, liquor, tobacco, and TVA taxes combined.

16.     On February 25, 2008, Triana amended Ordinance 2006-05 to provide for the taxation of $1000.00 per bingo machine.  *See* Exhibit C.

17.    In November 2007, Defendants conducted a search and seizure at one establishment within the Town of Triana where non-profit organizations operated bingo games pursuant to Ordinance 2006-05, seizing property and issuing warrants for the arrests of individuals found within that establishment for promotion of gambling and possession of a gambling device under the auspices of *Alabama Code* §§ 13A-12-22 and -27, a misdemeanor.  No charges were filed after the November 2007 raid, however.

18.    More recently, at or about eleven o'clock on Saturday evening, March 8, 2008, Madison County Sheriff Deputies, under the direction of Defendant, conducted raids of bingo facilities Triana VFW and Charity Bingo.  The Deputies seized over 300 bingo machines and $175,000 in cash.  *See id*.  The Deputies instructed bingo customers and Triana Police Officers to leave the premises.  The Madison County Sheriff Deputies escorted the Triana police officers, including its Chief of Police, from the premises and prohibited them from making any inquiries.

19.    The Sheriff and his agents displayed a complete lack of respect for the authority of the Triana Police Department, the Chief of Police, and the authority of the Town of Triana to police the charitable bingo operations within its corporate limits.  *See id*.

19.    None of the nonprofit organizations or bingo facilities was known to be operating outside of compliance with Ordinance or Amendment 387.

20.   The Sheriff's actions on March 8, 2008 have shut down all charitable bingo operations within Triana.  None of the bingo facilities have re-opened since the raid.

21.   Triana has a right to and a property interest in the collection of revenues derived from Ordinance 2006-05 and bingo operations within its corporate limits. Because of the Sheriff's actions closing all charitable bingo operations, Triana has been deprived of tax revenue as provided for in Ordinance 2006-05.

## FIRST CLAIM FOR RELIEF

### Unconstitutional Taking under the Fifth and Fourteenth Amendments of the United States Constitution

22.   The Fifth Amendment of the United States Constitution prohibits the taking of private property for public use without just compensation.  U.S. CONST. amend. V.

23.   The Fifth Amendment's prohibition on taking property for public use without just compensation is applicable to state and local governments, including the Defendant, through the Fourteenth Amendment of the United States Constitution.  U.S. CONST. Amend. XIV.

24.   Plaintiff has a protected property interest under the 5th and 14th Amendments in the collection of taxes on bingo operations within its corporate limits.

25.    Defendants have taken Plaintiff's right to collect taxes on charitable bingo operations, including taxes on bingo facilities, bingo machines, and bingo participants, by confiscating all of the bingo machines in operation in the corporate limits of Triana, arresting the vendor of one bingo facility and issuing a warrant for the arrest of the vendor of the other bingo facility within Triana, and seizing the cash receipts of those facilities.  Defendants have taken Plaintiff's right to collect taxes on bingo operations by effectively shuttering all charitable bingo operations within Triana.

26.    The Defendants' conduct constitutes action under color of state law undertaken pursuant to a statute, ordinance, regulation, policy, custom, or practice in violation of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment and in violation of 42 U.S.C. § 1983.

27.    Plaintiff is a "person" for purposes of 42 U.S.C. § 1983.

28.    Plaintiffs' First Claim for Relief presents a justiciable case or controversy ripe for review.

29.    Defendant has taken Plaintiff's property without just compensation by and through is interpretation and application of Amendment 387.

30.    Plaintiff respectfully requests the Court to issue a preliminary and permanent injunction:

(1)     Declaring that Defendant's actions in detaining, arresting, charging persons engaged in bingo operations and/or seizing or otherwise confiscating property located at licensed bingo facilities within the corporate limits of Triana upon the basis of violations of Alabama Code § 13A-12-22, which makes it illegal to promote gambling, or upon the basis of §13A-12-27, which makes it illegal to possess a gambling device, is an unconstitutional taking of Plaintiff's property without just compensation;

(2)     Ordering Defendant to return to the respective bingo facilities within the corporate limits of Triana any and all property seized or confiscated in November 2007 and/or March 8, 2008;

(3)     Prohibiting Defendant from any further unconstitutional taking of Plaintiff's property, including in detaining, arresting, charging persons engaged in bingo operations and/or searching and/or seizing or otherwise confiscating property located at licensed bingo facilities within the corporate limits of Triana upon the basis of violations of Alabama Code § 13A-12-22, which makes it illegal to promote gambling, or upon the basis of §13A-12-27, which makes it illegal to possess a gambling device.

## SECOND CLAIM FOR RELIEF

### Violation of Equal Protection Under the Fourteenth Amendment of the United States Constitution

31.    Triana hereby incorporates by reference the allegations of the paragraphs set forth above as though fully set forth herein.

32.    The Fourteenth Amendment of the United States Constitution prohibits state and local governments from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

33.    The Equal Protection Clause prohibits a state or local government from intentionally treating an individual differently from others similarly situated where there is no rational basis for the difference in treatment.

34.    The Defendants' actions are an unconstitutional violation of the Equal Protection Clause of the Fourteenth Amendment.

35.    Triana's population is predominantly African-American and lower income. Ninety-five percent of the residents of Triana are African-American. Triana has long struggled to attract business development and to generate revenues like other municipalities and parts of Madison County.

36.    The Defendants' conduct constitutes action under color of state law undertaken pursuant to a statute, ordinance, regulation, policy, custom, or practice in violation of the Fourteenth Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983.

37.    The Defendants' actions, under color of state law, treat citizens of

Triana differently from other similarly-situated individuals in the State who enjoy

the rights and privileges of the Alabama Constitution, including the right of self

governance and the benefit of revenue generated from legal bingo operations

within their corporate or county limits.  Defendant's actions are based upon race

and are not narrowly tailored to achieve a compelling state interest, nor are they

substantially related to an important governmental objective.34. There is no

rational basis for the difference in treatment between Triana's citizens and other

similarly-situated individuals in the County and the State.  Defendants' action

against Triana's citizens are abritrary and without basis in law.

38.    Plaintiff is a "person" for purposes of 42 U.S.C. § 1983.

39.    Triana's Second Claim for Relief presents a justiciable case or controversy

ripe for review.

40.    Plaintiff respectfully requests the Court to issue a preliminary and permanent

injunction:

(1)    Declaring that Defendant's actions in detaining, arresting, charging

persons engaged in bingo operations and/or seizing or otherwise confiscating

property located at licensed bingo facilities within the corporate limits of Triana

upon the basis of violations of Alabama Code § 13A-12-22, which makes it illegal

to promote gambling, or upon the basis of §13A-12-27, which makes it illegal to

possess a gambling device, subjects Plaintiff to unequal protection of the law based upon racial discrimination;

(2)     Ordering Defendant to return to the respective bingo facilities within the corporate limits of Triana any and all property seized or confiscated in November 2007 and/or March 8, 2008;

(3)     Prohibiting Defendant from applying the laws of the State of Alabama with an unequal hand, specifically, taking any further action to prohibit bingo operations within the corporate limits of Triana, including in detaining, arresting, charging persons engaged in bingo operations and/or searching and/or seizing or otherwise confiscating property located at licensed bingo facilities within the corporate limits of Triana upon the basis of violations of Alabama Code § 13A-12-22, which makes it illegal to promote gambling, or upon the basis of §13A-12-27, which makes it illegal to possess a gambling device.

Respectfully submitted,

_____
One of the Attorneys for Plaintiffs

**Of Counsel**
Andrew P. Campbell
Caroline Smith Gidiere
Campbell, Gidiere, Lee,
   Sinclair & Williams, PC
2100-A SouthBridge Pkwy, Suite 450
Birmingham, AL 35209
Tele: 205.803.0051
Fax:  205.803.0053

## **JURY DEMAND**

Plaintiff hereby requests trial by struck jury in this cause of action on all claims so triable.

Of Counsel

## PLEASE SERVE THE FOLLOWING DEFENDANTS VIA CERTIFIED MAIL

BLAKE DORNING
Madison County Sheriff's Office
Courthouse Room 206
100 Northside Square
Huntsville, Alabama 35801

**Operation of Bingo Games by Nonprofit Organizations in Madison County.**

The operation of bingo games for prizes or money by nonprofit organizations for charitable or educational purposes shall be legal in Madison county, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions. The said governing bodies shall have the authority to promulgate rules and regulations for the licensing and operation of bingo games, within their respective jurisdictions, provided, however, that said governing bodies must insure compliance with the following provisions:

(a) No person under the age of 19 shall be permitted to play any game or games of bingo, nor shall any person under the age of 19 be permitted to conduct or assist in the conduct of any game of bingo;

(b) No bingo license shall be issued to any nonprofit organization, unless such organization shall have been in existence for at least 23 months immediately prior to the issuance of the license;

(c) Bingo games shall be operated only on the premises owned or leased by the nonprofit organization operating the bingo game. If the premises is leased, the rate of rental shall not be based on a percentage of receipts or profits resulting from the operation of bingo games;

(d) No nonprofit organization shall enter into any contract with any individual, firm, association or corporation to have said individual or entity operate bingo games or concessions on behalf of the nonprofit organization, nor shall said nonprofit organization pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game;

(e) A nonprofit organization shall not lend its name or allow its identity to be used by any other person or entity in the operating or advertising of a bingo game in which said nonprofit organization is not directly and solely operating said bingo game;

(f) Prizes given by any nonprofit organization for the playing of bingo games shall not exceed $1,000.00 in cash or gifts of equivalent value during any bingo session or $2,000.00 in cash or gifts of equivalent value during any calendar week;

(g) No person or organization, by whatever name or composition thereof, shall take any salary, expense money, or fees as remuneration for services rendered in the operation of any bingo game.

ORDINANCE NO. 2006-0-5

### BE IT ORDAINED by the Council of the Town of Triana, Alabama

Alabama Constitution of 1901, Amendment 387, ratified September 2, 1980 authorizes governing bodies of cities and towns in Madison County to promulgate rules and regulations for the licensing and operation of bingo games. The Town of Triana adopted an ordinance for that purpose in 1994. In order to promote the health and welfare of its citizens and encourage economic development and to update the ordinance in light of recent developments in the operation of bingo games nationwide and in Alabama, the Council deems it apporopriate to repeal the ordinance previously passed and substitute in its place the following:

Section 1.   Definitions.

For the purposes of this Article, the following words and phrases shall have the meanings respectively ascribed to them:

*Authorized nonprofit organization:*  Any bona fide nonprofit religious or charitable organization or bona fide educational, fraternal, civic or service organization or bona fide organization of veterans, which by its charter, certificate of incorporation or constitution operates without profit to its members: provided, that each such organization shall have been in existence for at least 23 months immediately prior to the issuance of any license under this Article. Authorized nonprofit organizations need not be domiciled in the State of Alabama.   There shall be no limit on the number of nonprofit organizations which may operate bingo games at a bingo facility.

*Bingo:*  A specific game of chance, commonly known as bingo, in which prizes or cash are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random. The definition of bingo shall include both "call bingo" in which designated numbers or symbols are drawn by a person and matched to numbers of symbols on a paper card and "electronic bingo" in which the numbers or symbols are selected at random by a computer and the card is present only in an electronic format. In the event that any controversy concerning whether or not certain activity, or type of activity, constitutes the game of "bingo", as herein defined, and for which a license may be issued, the decision of the Town Council shall control, and shall be final.

*Bingo Session:*  Any continuous series of bingo games conducted pursuant to this Article provided that any session shall end and a new session start when the prize amount given out by the nonprofit organizations operating a bingo session exceeds   thousand dollars ($1,000.00) for each such nonprofit organization.

1

*Bingo Facility*: A facility in which bingo games are operated by nonprofit organizations as provided in this Article. As long as nonprofit organizations are operating the bingo games, the bingo facility may be owned or operated by an individual, partnership or for profit organization.

*License*:  A license issued pursuant to the provisions of this Article.

*Prizes Given*:  Cash or prizes of equivalent value awarded in "call bingo" or in the case of electronic bingo, cash or prizes given by the facility cashier to players at the completion of play.

Section 2.    Authorization.

It shall be lawful for any authorized nonprofit organization as defined in this article, upon obtaining a license therefore as hereinafter provided, to conduct games of bingo within the corporate limits of the Town.

Section 3.    License – Application; Fee

(a)     Each applicant organization shall file with the  Town Clerk a written application on a form prescribed by the Town Clerk.

(b)     In each application there shall be a designated member of the applicant organization under whom the games of bingo are to be conducted, and there shall be attached to the application a statement executed by the member so designated that such member will be responsible for the conduct of such bingo games in accordance with the terms of the license issued to such applicant organization, the provisions of this article and such constitutional amendment. Persons other than the above referenced member may participate in the operation of the bingo games, subject to the supervision of the above referenced member.

(c)     Authorized nonprofit organizations need not be domiciled in the State of Alabama.

(d)     The Town Clerk shall cause to be investigated the qualifications of each applicant organization as provided under this article with due expedition after the filing of each application and shall authorize the issuance of a license to an authorized nonprofit organization upon the payment of a license fee of $100.00 for each license year.

2

(e)    Prior to issuing any license, the Town Clerk shall investigate at least the following:

    i)    the relationship between the nonprofit organizations and those who provide equipment, facilities, or service;

    ii)    whether any electronic bingo games meet the requirement of this ordinance;

    iii)    whether any building in which a facility is located meets all requirements of the Town Building Code;

    iv)    whether the bingo facility is within 1 mile of another licensed bingo facility

(f)    As a part of the application process, the Town Clerk shall make a finding that the applicant is an authorized nonprofit organization and that the procedures and practices it intends to use in operating bingo games fully comply with this regulation and Amendment 387.

(g)    A license may be renewed annually by filing a renewal application with the Town Clerk within thirty (30) days prior to the date of expiration on a form prescribed by the Town Clerk. The Town Clerk shall issue or deny such renewal in the same manner as the issuance or denial of an application for a license.

Section 4.  General restrictions.

Any game of bingo conducted by a licensee hereunder shall be subject to the following restrictions, in addition to all other regulations provided herein:

(1)    No item of expense shall be incurred or paid in connection with the operating or conducting of any game of bingo except the following bona fide expenses may be incurred or paid in amounts bearing a reasonable relationship to that proportion of the total expense attributable to the conduct of bingo games:

(a) ~~The purchase, lease or rental of equipment necessary for~~ conducting bingo on terms established by industry standards, including but not limited to, payment for wear and tear, depreciation, maintenance, or repair of equipment;

(b) Cash prizes or the purchase of prizes of merchandise;

(c) Rental of the location at which bingo is conducted, subject, however, to subparagraph (5) of this Section;

(d) Utilities;

(e) Janitorial services;

(f) The fee required for issuance or reinsurance of a license to operate bingo games;

(g) Security services;

(h) Food preparation services;

(h) Other reasonable expenses incurred by the license holder not inconsistent with this Ordinance.

(3) Prizes given by any one non-profit organization shall not exceed one thousand dollars ($1,000) in cash or gifts of equivalent value during any bingo session.  Amendment 387 gives governing bodies in Madison County the authority to promulgate rules and regulations for the licensing of bingo games, and to choose whether to limit the prizes awarded by any nonprofit, on a session or weekly basis. The Town of Triana by this ordinance limits prizes given by any nonprofit organization to one thousand dollars ($1,000) per bingo session. It is anticipated by the Town of Triana that multiple licensed nonprofit organizations will operate bingo games at the same time in a bingo facility. The total prizes awarded shall not exceed one thousand dollars ($1,000) per nonprofit organization (example: if ten nonprofit organizations are operating bingo games at the same time then the total prizes given out by the nonprofit organizations shall not exceed $10,000 for any session.

(4) No person other than a licensee hereunder shall conduct any bingo game.

4

(5)    No bingo game shall be held, operated or conducted on or within any leased premises if rental under such lease is to be paid wholly or partly on the basis of a percentage of the receipts or net profits derived from the operation of such game.

(6)    No license shall be issued for operation of bingo by any nonprofit within 1mile of any other license bingo facility except for those licenses at the same time of the adoption of this ordinance.

(7)    A license issued pursuant hereto shall not be assignable or transferable

(8)    A license issued pursuant to this Article shall be valid for one (1) year from the date of issuance.

(9)    Each license holder shall display the license conspicuously at the location where bingo games are being conducted at all times during the conduct of the game.

Section 5.    Additional restrictions.

(1)    No person under the age of 19 years shall be permitted to play in any game of bingo conducted pursuant to any license issued under this article, nor shall any person under 19 years of age be permitted to conduct or assist in the conduct of any game of bingo.

Section 6.    Offenses: Forfeiture of license: limitations on legibility to reapply.

(1)    The unauthorized conduct of a bingo game and any willful Violation of any provision of this Article shall constitute a Class C misdemeanor.

(2)    Any person who shall:

(a) Make any false statement in an application for any license authorized under this article;

(b) Fail to keep such books and or to fully and truly record all transactions connected with the conducting of any bingo game; or

© Falsify or make any false entry in any books or records so far as they relate to the conduct of bingo games or the disposition of any proceeds therefrom;  shall be guilty of a Class C misdemeanor.

Section 7.    Tax; Proceeds.

1.    A qualified organization licensed under this Article shall be taxed at a rate of Three Dollars ($3.00) per person participating in a bingo session for games of call bingo. For electronic bingo, a tax of Two Hundred Dollars ($200.00) per year per machine located in a bingo facility shall be paid with the total tax to be divided among the licensees who operate bingo games in that facility. All such tax shall be distributed by the Town Clerk as directed by the Town Council.

**ADOPTED** this _9ᵗʰ_ day of October, 2006

Mayor of the Town of Triana,
Alabama

Sharron Humphrey, Town Clerk

## Amended

### ORDINANCE NO. 2006-05

**BE IT ORDAINED** by the Council of the Town of Triana, Alabama

Alabama Constitution of 1901, Amendment 387, ratified September 2, 1980 authorizes governing bodies of cities and towns in Madison County to promulgate rules and regulations for the licensing and operation of bingo games. The Town of Triana adopted an ordinance for that purpose in 1994. In order to promote the health and welfare of its citizens and encourage economic development and to update the ordinance in light of recent developments in the operation of bingo games nationwide and in Alabama, the Council deems it appropriate to repeal the ordinance previously passed and substitute in its place the following:

Section 1. Definitions.

For the purposes of this Article, the following words and phrases shall have the meanings respectively ascribed to them:

Authorized nonprofit organization: Any bona fide nonprofit religious or charitable organization or bona fide educational, fraternal, civic or service organization or bona fide organization of veterans, which by its charter, certificate of incorporation or constitution or constitution operates without profit to its members: Provided, that each such organization shall have been in existence for at least 23 months immediately prior to the issuance of any license under this Article. Authorized nonprofit organizations need not be domiciled in the State of Alabama. There shall be no limit on the number of nonprofit organizations which may operate bingo games at a bingo facility.

Bingo: A specific game of chance, commonly known as bingo, in which prizes or cash are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random. The definition of bingo shall include both "call bingo" in which designated numbers or symbols are drawn by a person and matched to numbers of symbols on a paper card and "electronic bingo" in which the numbers or symbols are selected at random by a computer and the card is present only in an electronic format. In the event that any controversy concerning whether or not certain activity, or type of activity, constitutes the game of "bingo", as herein defined, and for which a license may be issued, the decision of the Town Council shall control, and shall be final.

Bingo Session: Any continuous series of bingo games conducted pursuant to this Article provided that any session shall end and a new session start when the prize amount

given out by the nonprofit organizations operating a bingo session exceeds thousands ($1,000.00) for each such nonprofit organization.

Bingo Facility: A facility in which bingo games are operated by nonprofit organizations as provided in this Article. As long as nonprofit organizations are operating the bingo games, the bingo facility may be owned or operated by an individual, partnership or for profit organization.

License: A license issued pursuant to the provisions of this Article.

Prizes Given: Cash or prizes of equivalent value awarded in "call bingo" or in the case of electronic bingo, cash or prizes given by the facility cashier to players at the completion of play.

Section 2.   Authorization.

It shall be lawful for any authorized nonprofit organization as defined in this article, upon obtaining a license therefore as hereinafter provided, to conduct games of bingo within the corporate limits of the Town.

Section 3.   License-Application; Fee

(a)    Each applicant organization shall file with the Town Clerk a written Application on a form prescribed by the Town Clerk.

(b)    In each application there shall be a designated member of the applicant organization under whom the games of bingo are to be conducted, and there shall be attached to the application a statement executed by the member so designated that such member will be responsible for the conduct of such bingo games in accordance with the terms of the license issued to such applicant organization, the provisions of this article and such constitutional amendment. Persons other than the above referenced member may participate in the operation of the bingo games, subject to the supervision of the above referenced member.

©    Authorized nonprofit organizations need not be domiciled in the State of Alabama.

(d)    The Town Clerk shall cause to be investigated the qualifications of each Applicant organization as provided under this article with due expedition after the filing of each application and shall authorize the issuance of a license to an authorized nonprofit organization upon the payment of a license fee of $100.00 for each license year.

(e)   Prior to issuing any license, the Town Clerk shall investigate at least the Following:

> i)   the relationship between the nonprofit organizations and those who provide equipment, facilities, or service;
>
> ii)   whether any electronic bingo games meet the requirement of this Ordinance;
>
> iii)   whether any building in which a facility is located meets all Requirements of the Town Building Code;
>
> iv)   whether the bingo facility is within **1 mile** of another licensed bingo facility

(f)   As a part of the application process, the Town Clerk shall make a finding that the applicant is an authorized nonprofit organization and that the procedures and practices it intends to use in operating bingo games fully comply with this regulation and Amendment 387.

(g)   A license may be renewed annually by filing a renewal application with the Town Clerk within (30) days prior to the date of expiration on a form prescribed by the Town Clerk. The Town Clerk shall issue or deny such renewal in the same manner as the issuance or denial of an application for a license.

Section 4.   General Restrictions.

Any game of bingo conducted by a licensee hereunder shall be subject to the following restrictions, in addition to all other regulations provided herein:

(1)   No item of expense shall be incurred or paid in connection with the operating or conducting of any game of bingo except the following bona fide expenses may be incurred or paid in amounts bearing a reasonable relationship to that proportion of the total expense attributable to the conduct of bingo games:

(a) The purchase, lease or rental of equipment necessary for conducting bingo on terms established by industry standards, including but not limited to payment for wear and tear, depreciation, maintenance, or repair of equipment;

(b) Cash prizes or the purchase of prizes of merchandise;

(c) Rental of the location at which bingo is conducted, subject, however, to subparagraph (5) of this section;

(d) Utilities;

(e) Janitorial services;

(f) The fee required for issuance or reinsurance of a license to operate bingo games;

(g) Security services;

(h) Food preparation services;

(i) Other reasonable expenses incurred by the license holder not inconsistent with this ordinance.

(2)    Prizes given by any one non-profit organization shall not exceed one thousand dollars ($1,000) in cash or gifts of equivalent value during any bingo session. Amendment 387 gives governing bodies in Madison County the authority to promulgate rules and regulations for the licensing of bingo games, and to choose whether to limit the prizes awarded by any nonprofit, on a session or weekly basis. The Town of Triana by this ordinance limits prizes given by any nonprofit organization to one thousand dollars ($1,000.00) per bingo session. It is anticipated by the Town of Triana that multiple licensed nonprofit organizations will operate bingo games at the same time in a bingo facility. The total prizes awarded shall not exceed ($1,000.00) per nonprofit organization (example: it ten nonprofit organizations are operating bingo games at the same time then the total prizes given out by the nonprofit organizations shall not exceed $10,000.00 for any session.

(3)    No person other than a license hereunder shall conduct any bingo game.

(4)     No Bingo game shall be held, operated or conducted on or within any leased premises if rental under such lease is to be paid wholly or partly on the basis of a percentage of the receipts or net profits derived from the operations of such game.

(5)     No license shall be issued for operation of bingo by any nonprofit within 1 mile of any other license of any other license bingo facility except for those licenses at the same time of the adoption of this ordinance.

(6)     A license issued pursuant hereto shall not be assignable or transferable.

(7)     A license issued pursuant to this Article shall be valid for one (1) year from the date of issuance.

(8)     Each license holder shall display the license conspicuously at the location where Bingo games are being conducted at all times during the conduct of the game.


Section 5. Additional Restrictions.

(1)   No person under the age of 19 years shall be permitted to play in any game of bingo conducted pursuant to any license issued under this article, nor shall any person under 19 years of age be permitted to conduct or assist in the conduct of any game of bingo.


Section 6.   Offenses: Forfeiture of license: limitations on legibility to reapply.

(1)   The unauthorized conduct of a bingo game and any willful violation of any provision of this Article shall constitute a Class C misdemeanor.

(2)   Any person who shall:

(a) Make any false statement in an application for any license authorized under this article;
(b) Failure to keep such books and or fully and truly record all transactions connected with the conducting of any bingo game; or

© Falsify or make any false entry in any books or records so far as they relate to the conduct of bingo games or the disposition of any proceeds there from; shall be guilty of a Class C misdemeanor.

**Section 7. Tax; Proceeds.**

1. A qualified organization licensed under this Article shall be taxed at a rate of Three Dollars ($3.00) per person participating in a bingo session for games of call bingo. For electronic bingo, a tax of One thousand Dollars ($1,000.00) per year per machine located in a bingo facility shall be paid with the total tax to be divided among licensees who operate bingo games in that facility. All such tax shall be distributed by the Town Clerk as directed by the Town Council.

**ADOPTED** this 25th day of February, 2008

Mayor of the Town of Triana, Alabama

Sharron Humphrey, Town Clerk